1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH CARTER,

            Plaintiff,

    v.

JENNY A. DURKAN, et al.,

            Defendants.

CASE NO. C21-1046JLR

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

## I.   INTRODUCTION

Before the court is Defendants Jenny A. Durkan, Adrian Diaz, Pete Holmes,

Officer John Marion, and Officer Jarod Stone's (collectively, "Defendants") motion to

dismiss *pro se* Plaintiff Joseph Carter's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (MTD (Dkt. # 9); Reply (Dkt. # 15).)  Mr. Carter opposes

Defendants' motion.  (Resp. (Dkt. # 14).[1])  The court has considered the motion, all

_____

[1] Although Mr. Carter's response was filed four days late (*see* Resp.; 11/9/21 Order (Dkt.
# 12), the court finds that Mr. Carter's failure to file his response by the prescribed deadline

1  submissions filed in support of and in opposition to the motion, the relevant portions of

2  the record, and the applicable law.  Being fully advised,[2] the court GRANTS Defendants'

3  motion.

## II.   BACKGROUND

4

5       Mr. Carter, who is proceeding *pro se* and *in forma pauperis* (*see* IFP Order (Dkt.

6  # 5)), filed a complaint against Defendants, which was docketed on August 16, 2021 (*see*

7  Compl. (Dkt. # 6)).  His complaint alleges three claims under 42 U.S.C. § 1983:  (1) false

8  imprisonment or false arrest[3]; (2) malicious prosecution; and (3) violation of due process.

9  (*See* Compl. at 3-7.[4])  Defendants include Seattle Police Department Officers Stone and

10 Marion, sued in their individual capacities, and the Chief of the Seattle Police

11 _____

12 constitutes excusable neglect and will consider Mr. Carter's response.  *See* Fed. R. Civ. P.
   6(b)(1)(B) (stating that a court may extend the time for filing a response where a party's failure

13 to meet a deadline was due to excusable neglect); *see also Blaisdell v. Frappiea*, 729 F.3d 1237,
   1241 (9th Cir. 2013) (stating that a court must construe liberally a *pro se* plaintiff's filings);

14 *Brophy v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-0411-TOR, 2015 WL 6511627, at *2
   (E.D. Wash. Oct. 28, 2015) ("The Court construes Plaintiffs' act of filing a late response as a

15 request to consider their brief past the deadline.").  The court's consideration of Mr. Carter's
   response will not prejudice Defendants because Defendants had the opportunity to file a reply

16 that substantively addressed Mr. Carter's response.  *See Brophy*, 2015 WL 6511627, at *2
   (finding "minimal prejudice" where the other party "was still afforded a chance to file a reply").

17      [2] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court finds oral
   argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

18      [3] Mr. Carter refers to the claim as one for false imprisonment, but he includes allegations

19 that are more appropriately identified as a claim for false arrest.  *See Jacques v. Sharp*, 922 P.2d
   145 (1996) (noting that a false arrest occurs when a person with actual or apparent legal authority

20 to arrest unlawfully restrains or imprisons another person).  Because the two are inherently
   intertwined, the court liberally construes Mr. Carter's complaint as alleging both claims.  *Heckert*

21 *v. City of Yakima*, 708 P.2d 407, 407 (Wash. Ct. App. 1985) ("[A] false imprisonment occurs
   whenever a false arrest occurs . . . .").

22      [4] Unless otherwise indicated, the court uses the CM/ECF page numbers when citing to
   the Mr. Carter's complaint.

Department, the Mayor of Seattle, and the Seattle City Attorney, sued in their official capacities.[5]  (*See id.* at 1-3.)  Mr. Carter's claims appear to stem from his interactions with the Seattle Police Department and the Seattle City Attorney's Office from sometime before 2015 to 2019.  (*See id.* at 3-7.)  His factual allegations, however, are almost entirely dedicated to his June 2015 arrest for criminal trespass.  (*See generally id.* at 3-7.) He begins by discussing his interactions with Officers Stone and Marion "prior to" and during June 2015.  (*See id.* at 5.)  Mr. Carter alleges that those two officers have "profile[d] and harass[ed] [him] every time they seen [sic] [him]."  (*See id.*)  He allegedly filed a complaint with the "Seattle Office of Police Accountability" against the officers for harassment and profiling.  (*See id.*)  Mr. Carter's interactions with the officers ultimately led to his arrest for criminal trespass on what he alleges to be June 15, 2015. (*Compare id.*, *with* Ex. A to Resp. (Dkt. # 9-1) (stating that "on or around June 20, 2015" Mr. Carter was arrested for criminal trespass).)  His claim of due process violations appears to arise out of this incident, as well as his interactions with Officers Stone and Marion prior to June 2015, which he alleges amounted to racial profiling and harassment in violation of his constitutional rights.  (*See* Compl. at 3-8.)

It is less clear, however, what incident(s) form the basis of Mr. Carter's malicious prosecution and false imprisonment or false arrest claims.  (*See generally id.*)  In discussing his malicious prosecution claim, he states that he has been arrested for criminal trespass seven times, "and to date 6 of them [have] been dismissed with

---

[5] Mr. Carter's complaint also references unnamed prosecutors and king county sheriff's officers.  (*See* Compl. at 6-7.)

1   prejudice." (*See id.* at 6-7.)  He alleges that the "City of Seattle engaged in prosecution

2   even after the Judge" dismissed the other criminal trespass charges against him.  (*See id.*)

3   Mr. Carter fails, however, to identify the timeframes of these seven prosecutions or the

4   specific prosecuting attorneys involved in these prosecutions.  (*See id.* at 3-7 (alleging

5   earlier in his complaint that "Pete Holmes has willingly and knowingly" charged him

6   with criminal trespass).)  Aside from his June 2015 arrest, the only other specific incident

7   that he mentions is his criminal trespass charge that was still pending in October 2019.

8   (*See id.* at 6-7.)  As such, he appears to associate his malicious prosecution claim with

9   this 2019 criminal trespass prosecution and/or the criminal trespass prosecution stemming

10   from his June 2015 arrest.  (*See id.*)  Mr. Carter's false imprisonment or false arrest claim

11   is similarly vague.  (*See id.* at 7.)  He alleges that "to date [he] ha[s] been arrest[ed] 4

12   times by these officers," even after he has shown them proof that his case has been

13   dismissed with prejudice.  (*See id.*)  Mr. Carter again fails to identify the timeframes of

14   these four allegedly unlawful arrests or the specific arresting individuals involved in these

15   four arrests.  (*See id.*)  The only arrest that Mr. Carter addresses in his complaint is his

16   June 2015 criminal trespass arrest, as well as the arrest that presumably led to his 2019

17   criminal trespass prosecution.  (*See id.* at 4-7.)  Thus, he appears to associate his false

18   imprisonment or false arrest claim with the June 2015 criminal trespass arrest and/or the

19   criminal trespass arrest that led to his 2019 criminal prosecution.  (*See id.*)

20         Defendants now move to dismiss Mr. Carter's complaint pursuant to Federal Rule

21   of Civil Procedure 12(b)(6).  (*See* MTD at 1.)

22   *//*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

### III.   ANALYSIS

The court begins by setting forth the standard of review before turning to its

analysis of Defendants' motion to dismiss.

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

claim is facially plausible "when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While

"detailed factual allegations" are not required, a complaint must include "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  The court is not

required "to accept as true allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266

F.3d 979, 988 (9th Cir. 2001).  Under Rule 12(b)(6), dismissal can be based on "the lack

of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Further, dismissal is proper on grounds that a claim is barred by the applicable statute of

limitations where the running of the limitations period is apparent on the face of the

complaint. *See Jones v. Block*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show

that relief is barred by the applicable statute of limitations, the complaint is subject to

1   dismissal for failure to state a claim."); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th

2   Cir. 2000).

3       When considering a motion to dismiss under Rule 12(b)(6), the court construes the

4   complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v.*

5   *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept

6   all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor.

7   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The

8   court also liberally construes a complaint filed by a *pro se* litigant like Mr. Carter.  *See*

9   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally

10  construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

11  stringent standards than formal pleadings drafted by lawyers." (citations omitted)).

12  However, "*pro se* litigants in the ordinary civil case should not be treated more favorably

13  than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir.

14  1986), and the court cannot supply essential facts that the *pro se* plaintiff has failed to

15  plead, *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

16  **B.     Defendants' Motion to Dismiss**

17      Defendants argue that all of Mr. Carter's claims are subject to dismissal under

18  Federal Rule of Civil Procedure 12(b)(6) because they are barred by the applicable statute

19  of limitations and any timely allegations fail to state a claim for relief.  (*See* MTD at 4-9.)

20  The court begins by addressing the legal standard for Section 1983 claims before turning

21  to its analysis of each of Mr. Carter's claims.

22  //

1        1.  <u>Legal Standard for Section 1983 Claims</u>

2        Section 1983 creates a cause of action against a person who, acting under color of

3   state law, deprives another of rights guaranteed under the Constitution.  *See* 42 U.S.C.

4   § 1983.  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show:

5   (1) they suffered a violation of rights protected by the Constitution or created by federal

6   statute, and (2) the violation was proximately caused by a person acting under color of

7   state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the

8   second prong, a plaintiff must allege facts showing how individually named defendants

9   caused, or personally participated in causing, the harm alleged in the complaint.  *See Leer*

10  *v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th

11  Cir. 1981); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A person subjects

12  another to a deprivation of a constitutional right when committing an affirmative act,

13  participating in another's affirmative act, or omitting to perform an act which is legally

14  required.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).   Vague and conclusory

15  allegations of participation in a civil rights violations are not sufficient to support a claim

16  under § 1983.  *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

17        A defendant cannot be held liable solely on the basis of supervisory responsibility

18  or position.  *Monell v. N.Y.C. Dept. Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978).  Rather, a

19  plaintiff must allege that a defendant's own conduct violated his civil rights.  *City of*

20  *Canton v. Harris*, 489 U.S. 378, 385-90 (1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

21  Cir. 1989) ("A supervisor is only liable for the constitutional violations

22  of . . . subordinates if the supervisor participated in or directed the violations, or knew of

1    the violations and failed to act to prevent them.").  Moreover, a municipality cannot be

2    liable under Section 1983 on a vicarious liability theory.  *Monell*, 436 U.S. at 690-94.

3    Rather, liability only attaches where the municipality or policymaker causes the

4    constitutional violation through a "policy or custom, whether made by its lawmakers or

5    those whose edicts or acts may be fairly said to represent official policy."  *Id.*

6        2.  Claim for False Imprisonment or False Arrest under Section 1983

7        Mr. Carter's Section 1983 false imprisonment or false arrest claim alleges that he

8    was arrested four times by the "officers" and "King County Sheriff Officer [sic]."  (*See*

9    Compl. at 7.)  He claims that the "officers" violated his constitutional rights by arresting

10   him "even after [he] show[ed] them" proof that his "case" had been dismissed with

11   prejudice.  (*See id.*)

12        a.  *Timeliness*

13        Section 1983 provides a federal cause of action, but the limitations period in a

14   § 1983 suit is the same as that which the forum state provides for personal injury torts.

15   *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235,

16   249-250 (1989) (holding that "where state law provides multiple statutes of limitations

17   for personal injury actions, courts considering § 1983 claims should borrow the general

18   or residual statute for personal injury actions.")).  In Washington State, the statute of

19   limitations for personal injury actions is three years, *see* RCW 4.16.080(2), and this

20   three-year period therefore applies to each of Mr. Carter's § 1983 claims.  *See Hays v.*

21   *City of Spokane*, No. C11-0010LRS, 2011 WL 4852311, at *2 (E.D. Wash. Oct. 13,

22   2011) (citing *Robinson v. City of Seattle*, 830 P.2d 318, 347 (Wash. 1992)); *see also*

1    *Vardanyan v. Port of Seattle*, No. C11-1224RSM, 2012 WL 1821212, at *3 (W.D. Wash.

2    May 17, 2012).  Although the length of the statutory period is governed by state law, "the

3    accrual date of a § 1983 cause of action is a question of federal law that is not resolved by

4    reference to state law." *Wallace*, 549 U.S. at 388.  A civil rights claim accrues under

5    federal law "when the plaintiff knows or has reason to know of the injury that is the basis

6    of the action." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).

7         The Supreme Court has expressly held "that the statute of limitations upon a

8    § 1983 claim seeking damages for a false arrest or false imprisonment in violation of the

9    Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run

10   at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S.

11   at 397; *see also id.* at 389 ("[Because] false imprisonment consists of detention without

12   legal process, a false imprisonment [claim accrues] once the victim becomes held

13   pursuant to such process – when, for example, he is bound over by a magistrate or

14   arraigned on charges."); *West v. City of Mesa*, 594 F. App'x 923, 924 (9th Cir. 2014)

15   (noting plaintiff's false imprisonment claim accrued "when his detention was validated

16   by legal process").

17        Within the section of his complaint dedicated to the false imprisonment claim, Mr.

18   Carter alleges that he was unlawfully arrested four times, but he does not specifically

19   identify the date of the allegedly unlawful arrests nor does he identify the officers

20   involved.  (*See* Compl. at 7.)  Earlier in his complaint, however, he states that Officers

21   Stone and Marion unlawfully arrested him in June 2015 for criminal trespass.  (*See id.* at

22   5-6.)  Thus, the court liberally construes Mr. Carter's false imprisonment or false arrest

claim as arising out of his June 2015 arrest by Officers Stone and Marion. The court takes

judicial notice of the fact that Mr. Carter was arrested on June 20, 2015 for criminal

trespass and the criminal charge for that incident was filed on June 23, 2015.  (*See* Ex. A

to Resp.); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (stating

that a court may take judicial notice of "matters of public record" when considering a

12(b)(6) motion).  Thus, the statute of limitations began to accrue on June 23, 2015, when

Mr. Carter became "detained pursuant to legal process."  *Wallace*, 549 U.S. at 397.

Accordingly, Mr. Carter's claim for false imprisonment or false arrest is time-barred

because he filed the instant complaint more than three years after the limitations period

for his allegedly unlawful June 2015 arrest began to accrue.

Mr. Carter's complaint, however, also references a criminal trespass charge that

was still pending in October 2019.  This reference presumably refers to Mr. Carter's

August 29, 2018 arrest for criminal trespass.[6]  (*See* Ex. C to Resp.)  To the extent that Mr.

Carter meant to base this claim on his 2018 criminal trespass arrest, he must explicitly

state that.  Mr. Carter's false imprisonment or false arrest claim would not be time-barred

if it was based on his August 2018 arrest because Mr. Carter commenced this lawsuit on

August 16, 2021, before the three-year limitations period had run.  (*See generally*

//

---

[6] The court takes judicial notice of the fact that Mr. Carter was arrested for criminal trespass on August 29, 2018, was charged on June 18, 2019, and that the charge was dismissed with prejudice on December 17, 2019.  (*See* Ex. C to Resp. (Dkt. # 9-1); Ex. D to Resp. (Dkt. # 9-1)); *Mack*, 798 F.2d at 1282.

1    Compl.; Dkt.)  As discussed below, however, Mr. Carter's timely claim fails to state a

2    plausible claim for relief.

3            *b.  Failure to State a Claim*

4            A claim for unlawful arrest or imprisonment "is cognizable under § 1983 as a

5    violation of the Fourth Amendment provided that the arrest was made without probable

6    cause or other justification."[7]  *See Dubner v. City and Cnty. of S.F.*, 266 F.3d 959, 964

7    (9th Cir. 2001); *see also Owusu v. Bank of Am., N.A.*, No. C15-1606JLR-JPD, 2016 WL

8    4742487, at *3 (W.D. Wash. Aug. 9, 2016), *report and recommendation adopted*, No.

9    C15-1606JLR-JPD, 2016 WL 4761940 (W.D. Wash. Sept. 12, 2016); *Borunda v.*

10   *Richmond*, 885 F.2d 1384, 1391 (9th Cir.1988) ("[A]n arrest without probable cause

11   violates the Fourth Amendment and gives rise to a claim for damages under § 1983.");

12   *Baker*, 443 U.S. at 142 (noting that when a detention occurs as the result of a false arrest

13   in violation of the Fourth Amendment, a false imprisonment claim also arises).  Thus, in

14   order to prevail on § 1983 claims for false arrest and false imprisonment, a plaintiff "must

15   demonstrate that there was no probable cause to arrest him."  *Cabrera v. City of*

16   *Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *see also Kessack v. Wash. Dep't of*

17   *Corr.*, No. C19-0423TOR, 2021 WL 2832948, at *7 (E.D. Wash. July 7, 2021).

18   "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy

19

20           [7] The loss of liberty caused by an individual's mistaken incarceration "after the lapse of a
     certain amount of time" can also give rise to a claim under the Due Process Clause of the
21   Fourteenth Amendment.  *Lee v. City of L.A.*, 250 F.3d 668, 683 (9th Cir. 2001) (citing *Baker v.*
     *McCollan*, 443 U.S. 137, 145 (1979)); *see also Reynolds v. Lewis Cty. Washington*, No. C13-
     6062BHS, 2015 WL 1538539, at *7 (W.D. Wash. Apr. 7, 2015), *aff'd*, 700 F. App'x 747 (9th
22   Cir. 2017) (discussing due process violations in the context of allegedly unlawful arrests).

1    information sufficient to lead a person of reasonable caution to believe that an offense has

2    been or is being committed by the person being arrested." *United States v. Lopez*, 482

3    F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

4          Mr. Carter's complaint is deficient as to this claim in a number of ways.  First, he

5    fails to specify which of the named defendants, if any, were involved in his allegedly

6    unlawful 2018 arrest for criminal trespass.  If he seeks to hold Officers Stone and Marion

7    liable for this claim, he must establish their personal involvement in the alleged

8    constitutional violation.  *See Leer*, 844 F.2d at 633 (stating that a plaintiff in a Section

9    1983 action must allege facts showing how the named defendants caused, or personally

10   participated in causing, the harm alleged).  Moreover, as discussed below, to the extent

11   Mr. Carter seeks to hold Mayor Durkan or Police Chief Diaz liable for this claim in their

12   official capacities, he must establish that, as policymakers, they caused the constitutional

13   violation through an official "policy or custom."  *See infra* Section III.B.5.  Second, to

14   establish that he was unlawfully arrested in violation of his constitutional rights, Mr.

15   Carter must establish that he was arrested without probable cause.  However, Mr. Carter's

16   complaint only alleges that his arrest was unlawful because the officers arrested him

17   "even after [he] show[ed] them" proof that his "case" had been dismissed with prejudice.

18   (*See* Compl. at 7.)  He implies, with no authority, that the dismissal of his other criminal

19   trespass charges preempted or invalidated his August 2018 criminal trespass arrest.  (*See*

20   *id.*)  The fact that his other criminal trespass charges had been dismissed with prejudice is

21   insufficient to establish that the "officers" lacked probable cause to arrest him for

22   criminal trespass in 2018.

1    In sum, to the extent that Mr. Carter's false imprisonment or false arrest claim

2    arises from his June 2015 arrest, it is time-barred.  And to the extent that Mr. Carter's

3    claim arises from his August 2018 arrest, his complaint fails to state a plausible claim for

4    relief.  Thus, the court GRANTS Defendants' motion to dismiss Mr. Carter's false

5    imprisonment or false arrest claim.

6         3.  Claim for Malicious Prosecution under Section 1983

7         Mr. Carter's malicious prosecution claim vaguely alleges that "the City of Seattle"

8    engaged in malicious prosecution when it again prosecuted him for criminal trespass after

9    the Judge dismissed the earlier cases against him.  (*See* Compl. at 6-7 (noting that the

10   2015 criminal trespass charge was dismissed with prejudice in 2016); *see also* Ex. B to

11   Resp. (Dkt. # 9-1) (same).)  He also alleges that, after he was arrested and incarcerated,

12   the "City of Seattle prosecutor" would not bring him before the court knowing "that they

13   were in violation of the judge order of dismissal with prejudice."  (*See id.*)

14        *a.  Timeliness*

15        The Ninth Circuit has held that a claim for malicious prosecution does not accrue

16   until proceedings are terminated in favor of the accused, because that is an element of the

17   cause of action.  *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981).  It is unclear from

18   Mr. Carter's complaint, however, when the alleged malicious prosecutions occurred or

19   who was involved.  (*See* Compl. at 6-7.)  While Mr. Carter alleges that he has been

20   arrested seven times for criminal trespass, and that six have been dismissed, the only

21   prosecution that Mr. Carter specifically mentions in his complaint is one for criminal

22   trespass that was still pending in October 2019.  (*See id.* at 6-7.)  The court takes judicial

1  notice of the fact that Mr. Carter was arrested for criminal trespass in August 2018, and

2  that the charge was dismissed with prejudice on December 17, 2019.  (*See* Ex. C to

3  Resp.; Ex. D to Resp.); *Mack*, 798 F.2d at 1282.  Thus, liberally construing Mr. Carter's

4  complaint, he implies that Seattle City Attorney's Office's institution of legal

5  proceedings against him based on his 2018 criminal trespass arrest constituted a

6  malicious prosecution because his earlier criminal trespass charges was dismissed with

7  prejudice.[8]  (*See* Compl. at 6-7.)  Because the three-year statute of limitations on Mr.

8  Carter's claim for malicious prosecution arising out of the 2018 criminal trespass arrest

9  began to run on December 17, 2019, when the charge was dismissed, the court finds that

10  his malicious prosecution claim is not time-barred.  As discussed below, however, the

11  court concludes that Mr. Carter's timely malicious prosecution claim fails to state a

12  plausible claim for relief.

13              b.  *Failure to State a Claim*

14          Generally, "a claim of malicious prosecution is not cognizable under 42 U.S.C.

15  § 1983 if process is available within the state judicial system to provide a remedy."  *Bretz*

16  *v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).  An exception applies, however, and that

17  is where prosecution was undertaken for the purpose of denying a constitutional right.

18  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  "In order to prevail on

19  a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants

20

21          [8] To the extent that Mr. Carter bases this claim on the 2015/16 criminal trespass arrest
    and prosecution, that claim is time-barred by the applicable three-year statute of limitations.  *See*
    *Hays*, 2011 WL 4852311, at *2; (*see also* Ex. A to Resp.; Ex. B to Resp. (noting that the charge

22  was dismissed in March 2016)).

prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right.'" *Id.* (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).  Federal courts rely on state common law for elements of malicious prosecution. *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).  To prevail on a claim for malicious prosecution in Washington, a plaintiff must show that:

> (1) the prosecution was instituted or continued by the defendant, (2) there was want of probable cause for the institution or continuation of the proceeding, (3) the proceeding was instituted or continued through malice, (4) the proceeding was terminated on the merits in favor of the plaintiff or was abandoned, and (5) plaintiff suffered injury as a result of the prosecution.

*Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash. 1983).  Accordingly, in addition to having to make a showing on those five elements, a Washington plaintiff bringing a § 1983 claim of malicious prosecution must show that the defendants prosecuted him for the "purpose of denying him equal protection or another specific constitutional right.'" *Awabdy*, 368 F.3d at 1066.

Mr. Carter's claim fails to allege facts sufficient to state a claim for malicious prosecution under Section 1983 for multiple reasons.  First, Mr. Carter does not name the prosecutor that pursued the allegedly unlawful charges in 2018/19, nor does he specifically associate this claim with any of the named Defendants.  (*See generally* Compl.)  Although he begins his complaint by stating that "City of Seattle Attorney Pete Holmes has willingly and knowingly has [sic] charged [him] with criminal trespass after [his] cases ha[ve] been dismissed with prejudice," he does not allege why Seattle City Attorney Holmes, who is sued in his official capacity, bears liability for this claim as a

1    policymaker.  (*See* Compl. at 3.)  As discussed below, to hold Seattle City Attorney

2    Holmes liable in his official capacity, Mr. Carter must allege facts sufficient to establish

3    that Seattle City Attorney Holmes caused the alleged constitutional violation through an

4    official "policy or custom."  *See infra* Section III.B.5.  Second, the mere fact that his

5    other charges had been dismissed with prejudice is insufficient to establish that there was

6    a want of probable cause for the institution or continuation of the prosecution based on

7    his 2018 criminal trespass arrest, or that the proceedings were instituted or continued

8    through malice.  (*See* Compl. at 6-7.)  Thus, Mr. Carter fails to allege sufficient facts to

9    state a cognizable claim for malicious prosecution under Section 1983.

10          Accordingly, the court GRANTS Defendants' motion to dismiss Mr. Carter's

11   malicious prosecution claim.

12          4.   <u>Claim for Violation of Due Process under Section 1983</u>

13          Mr. Carter alleges that Officers Stone and Marion violated his Fifth and

14   Fourteenth Amendment due process rights by, among other things, profiling him because

15   of his race, harassing him, and failing to follow department policies.  (*See* Compl. at 6.)

16   He claims that his due process rights were violated in connection with his 2015 arrest for

17   criminal trespass and the Officers' conduct prior to that arrest.  (*See id.* at 5-6 (describing

18   the harassment and profiling prior to his June 2015 arrest).)  Because Mr. Carter's

19   complaint was not filed until August 16, 2021 (*see* Compl.), his § 1983 claim for

20   violation of due process is barred by the applicable three-year statute of limitations.  The

21   court also finds that this claim fails as a matter of law because (1) the Fifth Amendment

22   Due Process Clause does not apply to actions by local law enforcement or government

officials, *see Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause only applies to the federal government."); and (2) Mr. Carter fails to identify which of his substantive or procedural due process rights under the Fourteenth Amendment were allegedly violated by Officers Stone and Marion, *see, .e.g.*, *Reynolds*, 2015 WL 1538539, at *6 (discussing Section 1983 due process claims related to the plaintiff's arrest).  The court, therefore, GRANTS Defendants' motion to dismiss Mr. Carter's claim for violation of due process.

    5.  Section 1983 Official-Capacity Claims Against Local Government Officials

    Official-capacity suits filed against local government officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer.[9]  *See Hafer v. Mello*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Such officials are "persons" under section 1983, but only for purposes of prospective injunctive relief, and only if the plaintiff establishes that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation.  *See Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166; *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007).  Municipal liability based on an official policy can be established where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an

_____

[9] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  *Graham*, 473 U.S. at 166.  "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id.* (quoting *Monell*, 436 U.S. at 690 n.55).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . not a suit against the official personally, for the real party in interest is the entity."  *Id.*

1   implementation of that policy." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 417

2   (1997).  The ratification of a subordinate's unconstitutional action by an official with

3   policymaking authority can also invite municipal liability.  *See City of St. Louis v.*

4   *Praprotnik*, 485 U.S. 112, 126-28 (1988) (plurality opinion); *Larez v. City of L.A.*, 946

5   F.2d 630, 646 (9th Cir.1991) (noting that a policymaker's decision to "ma[ke], or ratif[y]

6   a decision that deprived plaintiffs of their constitutional rights would suffice for official

7   liability"); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (stating that a policy

8   or custom may be inferred if, after the subordinate's unconstitutional action, the

9   policymakers took no steps to reprimand or discharge the subordinates).  Moreover,

10  liability can be established where a policymaker's one-time decision to follow a specific

11  course of action causes the constitutional violation.  *Pembaur*, 475 U.S. at 481

12  ("Municipal liability attaches only where the decisionmaker possesses final authority to

13  establish municipal policy with respect to the action ordered."); *see also Oklahoma City*

14  *v. Tuttle*, 471 U.S. 808, 823 (1985) (stating that a "'policy' generally implies a course of

15  action consciously chosen from among various alternatives").

16          In his complaint, Mr. Carter names Mayor Durkan, Chief Diaz, and Seattle City

17  Attorney Holmes, in their official capacities, as defendants in this action.  While Mr.

18  Carter does not specifically identify which of his claims he is bringing against these

19  defendants, any claims against them are appropriately considered claims against their

20  respective local governmental entities.  (*See* Compl.); *see also Graham*, 473 U.S. at

21  165-66; *Streit v. Cnty. of L.A.*, 236 F.3d 552 (9th Cir. 2001).  His complaint, however, is

22  devoid of any facts setting forth a "policy or custom" from each of their respective

1   offices that allegedly violated his constitutional rights.  (*See generally* Compl.)  He does

2   not, for example, allege these defendants had final decision-making authority on a certain

3   issue and promulgated or ratified specific policies that caused the alleged constitutional

4   violations.  (*See generally id.*)  Under *Iqbal*, the court finds Mr. Carter's bare allegations

5   as to his claims against these three defendants to be insufficient to give fair notice and to

6   enable them to defend themselves effectively.  *See Little v. Gore*, 148 F. Supp. 3d 936,

7   957 (S.D. Cal. 2015) (stating that, following *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

8   [c]ourts in this circuit now generally dismiss claims that fail to identify the specific

9   content of the municipal entity's alleged policy or custom").  Accordingly, if Mr. Carter

10   wishes to maintain his official capacity claims against Mayor Durkan, Chief Diaz, and

11   Seattle City Attorney Holmes for malicious prosecution and false imprisonment or false

12   arrest, he must identify a "policy or custom" from each of their respective offices that led

13   to the constitutional violations alleged within those claims.  *See Castro v. Cnty. of Los*

14   *Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc), *cert. denied sub nom. L.A. Cnty.*

15   *v. Castro*, 137 S. Ct. 831 (2017).

16   **C.     Leave to Amend**

17         As a general rule, when a court grants a motion to dismiss, the court should

18   dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

19   316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  In determining

20   whether dismissal without leave to amend is appropriate, courts consider such factors as

21   undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

22   cure deficiencies by amendments previously allowed, undue prejudice to the opposing

1   party by virtue of allowance of the amendment, and futility of amendment.  *Foman v.*

2   *Davis*, 371 U.S. 178, 182 (1962).  The Ninth Circuit has further instructed that a district

3   court should not dismiss a *pro se* complaint without leave to amend unless "it is

4   absolutely clear that the deficiencies of the complaint could not be cured by amendment."

5   *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*,

6   846 F.2d 1202, 1203 (9th Cir. 1988)).

7          Because Mr. Carter's due process claim, and his false imprisonment or false arrest

8   and malicious prosecution claims arising out of his 2015/16 criminal trespass arrest and

9   prosecution, are barred by the statute of limitations, any amendments as to these claims

10  would be futile.  *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060

11  (9th Cir. 2008).  Although Mr. Carter has failed to plausibly plead his malicious

12  prosecution and false arrest or false imprisonment claims arising out of his 2018/19

13  criminal trespass arrest and prosecution against Defendants, at present, the court cannot

14  conclude that "it is absolutely clear that the deficiencies of the complaint could not be

15  cured by amendment."  *Id.*  Thus, the court GRANTS Mr. Carter leave to amend his

16  malicious prosecution and false imprisonment or false arrest claims arising out of his

17  2018/19 criminal trespass arrest and prosecution.  If he intends to continue to pursue a

18  § 1983 civil rights action for such claims in this court, he must file an amended complaint

19  setting forth a short, plain statement telling the court:  (1) the constitutional right he

20  believes was violated; (2) a specific description of the person who violated the right; (3)

21  when the violation occurred; (4) exactly what the individual did or failed to do; (5) how

22  the action or inaction of the individual is connected to the violation of his constitutional

rights; and (6) what specific injury he suffered because of the individual's conduct.  *See*

*Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  Further, to the extent he wishes to

maintain official-capacity claims against Mayor Durkan, Chief Diaz, and Seattle City

Attorney Holmes for the actions of their subordinates, Mr. Carter's amended complaint

must also identify the "policy or custom" that led to the alleged constitutional violations.

## IV.   CONCLUSION

For the foregoing reasons, the court:

1.      GRANTS Defendants' motion to dismiss (Dkt. # 9);

2.      DISMISSES Mr. Carter's due process claim under 42 U.S.C. § 1983 WITH

PREJUDICE and WITHOUT LEAVE TO AMEND; and

3.      DISMISSES Mr. Carter's claims for false arrest or false imprisonment and

malicious prosecution under 42 U.S.C. § 1983 against Defendants WITHOUT

PREJUDICE and WITH LEAVE TO AMEND.  Mr. Carter may file an amended

complaint for false imprisonment or false arrest and malicious prosecution related to the

2018/19 criminal trespass arrest and prosecution that alleges specific facts that resolve the

issues stated above no later than 21 days from the date of this order.  The court warns Mr.

Carter that failure to file an amended complaint that resolves the issues stated above

within that timeframe will result in dismissal of this case with prejudice.

//

//

//

//

1    Dated this 22nd day of December, 2021.

2

3    _____

4    JAMES L. ROBART
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22